## 7489

### BRICE v. SOUTHERN RY.

1. CARRIER—PASSENGER—NEGLIGENCE—WILFULNESS.—It is the duty of every employee of a railroad train to try to stop the train and look after a pasesnger who has fallen from the cars, and the failure to do so by one seeing him fall is a wilful disregard of duty.

2. IBID.—IBID.—IBID.—ISSUE.—Whether due care required a train auditor, who accosted a passenger on the steps of the car as to his fare, and who put himself in a perilous position while the train was running at a rapid speed to convince the auditor he had done so, to safeguard such passenger, is for the jury.

3. IBID.—IBID.—ISSUE—CONTRIBUTORY NEGLIGENCE.—While it is primarily negligence for a passenger to go on the platform of a moving car, yet if he is compelled to go there in case of sudden sickness through decency because the water-closet was locked, whether he was guilty of contributory negligence in loosening his hold on the guard rail and falling from the car, is for the jury.

4. IBID.—IBID.—The instruction that "an injury to a passenger on a train is itself *prima facie* evidence of negligence on the part of the railroad company," under the testimony in this case, was prejudicial to appellant in that it did not limit the injury to "some act of omission or commission of the servants of the carrier or some defect in the instrumentality of transportation."

Before KLUGH, J., Fairfield, February term, 1909. Reversed.

Action by Walter Brice against Southern Railway Company. From judgment for plaintiff, defendant appeals.

*Messrs. B. L. Abney* and *McDonald & McDonald,* for appellant. *Messrs. McDonald & McDonald* cite: *Plaintiff was guilty of contributory negligence:* Moore on Car., 856; 1 Tet. on Car., 428-30; 3 Hutch. on Car., secs. 1196-8; 39 W. Va., 366; 9 Rich. L., 84; 81 S. C., 100. *Instruction as to injury being prima facie evidence of negligence error:* 77 S. C., 434; 83 S. C., 53.

*Mr. Jno. J. McMahan,* contra, cites: *Presumption of negligence from injury to passenger:* 74 S. C., 136; 9 Rich. L.,

84; 62 S. C., 137; 55 S. C., 391; 61 S. C., 354; 58 S. C., 494; 12 S. C., 340; 77 S. C., 434.

March 14, 1910.  The opinion of the Court was delivered by

MR. JUSTICE WOODS.  This appeal is from a judgment for $500.00 recovered on a complaint alleging that the plaintiff, while a passenger, fell from defendant's train and received personal injuries because of the negligent and reckless failure of the conductor to properly care for him as a passenger, and because of the negligent, reckless, wanton, wilful and malicious failure of the conductor to stop the train, and of the conductor and other agents of the defendant to search for and rescue the plaintiff after he had fallen. A short summary of the evidence of the plaintiff will be sufficient to make clear the points raised by the appeal.

The plaintiff, a negro laborer, boarded the train at Ridgeway and paid his fare to Columbia.  Becoming nauseated and feeling that he was about to vomit, he tried to go into the water closet, but finding that locked, he went on the steps of the platform between the cars and undertook to relieve himself by vomiting while standing on the steps, holding to the guard rails with both hands.  At this juncture, the train officer to whom the plaintiff had paid his fare and whom he supposed to be the conductor came up on his way from one car to the other.  The plaintiff gives this account of the conversation and his fall: "Then he come and asked me had I paid my fare. I told him, 'yes, sir.' He asked me what did I pay. I told him 'I paid you seventy-seven cents. I suppose that is what you call it.  I give you a dollar, and here is twenty-three cents,' and turned loose my hand to show the change, and when I turned loose the hand and showed him my hand, by him being on the platform and me on the step, I showed him with my hand in that direction (indicating). The train went around the curve right quick and I sorter leant out this way, but when the train struck that straight

stretch it seems I had fallen. In falling I caught with my right hand and held with that hand as near as I can guess at it seventy-five yards."

The evidence from the trainmen was to the effect that the water closet was not locked. The officer was not in fact the conductor, but one of the train auditors who had recently been put on the defendant's trains to take up fares, a duty which had before devolved on the conductor. Although, according to the plaintiff's evidence, the officer must have known that a passenger had fallen from the train while it was going at the rate of forty-five or fifty miles an hour, yet the train was not stopped and nothing was done by the train officers for the relief of the passenger until the train reached Columbia. At the Columbia office of the defendant, the conductor left this notice: "Train auditor says negro man jumped off of thirty-three, one mile north of Killians. Have some one to look out for this man."

A motion was made for a nonsuit on the grounds: First, that there was no evidence of wilfulness or recklessness on the part of the defendant; second, that there was no evidence of negligence of the defendant constituting a proximate cause of the injury; third, that the evidence admitted of no other inference than that the plaintiff was guilty of contributory negligence.

When a passenger falls from a train running at a speed of forty-five or fifty miles an hour every officer of the train, as soon as he knows of the fall, must be conscious of the impelling duty to stop the train or to take some other prompt and efficient measure to rescue the passenger. Unless there is a necessity to go on far out of the ordinary, the failure to stop or to take some other measure likely to afford prompt relief is strong evidence of a reckless disregard of duty. This was in effect the testimony of every railroad employee who was examined; but it required no testimony to make the duty evident. The defendant's counsel,

relying on the fact that the conductor was in control of the movement of the train, asked the Court to hold that it was not the duty of the auditor to signal the train to stop. The Circuit Judge clearly and convincingly disposed of this position by the following language used in his charge:

"So it is not only the duty of the conductor to look after the safety, comfort and convenience of passengers, but it is the duty of the engineer so far as it comes within the scope of his other duties; it is the duty of the fireman, flagman, ticket taker or auditor, or any other person employed on the train of the railroad company in and about its business of carrying passengers; and the failure of any one of those persons within the scope of his occupation and duty there to exercise the highest degree of care for the safety of the passenger is the failure of the railroad itself. It not only depends on the conductor, but depends on every person employed in the operation of the train."

It is clearly the duty of every employee to signal and otherwise to try to stop the train or to use other reasonable efforts for the prompt rescue of a passenger who has fallen from the train.

As to the question of negligence as the proximate cause of the fall, we do not think that the auditor had any reason to apprehend that the plaintiff would release his hold of the guard rail in order to show his change merely because he was asked if he had paid his fare; but it was nevertheless a question for the jury whether due care required the auditor to take steps to safeguard a sick passenger in the perilous position in which he found the plaintiff. This is sufficient to dispose of this ground of the motion without passing on any other acts relied on as constituting actionable negligence of the defendant.

The Circuit Court could not hold that the evidence excluded any other inference than that the plaintiff was guilty of contributory negligence. The rule is well settled

that passengers should keep off the platform of moving cars. *Jarrell* v. *C. & W. C. Ry.,* 58 S. C., 495, 36 S. E., 910; *McLean* v. *Ry. Co.,* 81 S. C., 100, 61 S. E., 900. But the rule is not inflexible. A passenger may be impelled by the necessity of avoiding a greater danger, or by his respect for decency, to go on the platform. In this case there was evidence tending to show that the plaintiff in his emergency made due effort to get into the water closet without success, and resorted to the platform because decency made it necessary. Whether the necessity existed and whether the plaintiff was guilty of contributory negligence in releasing for an instant the grasp of one hand on the guard rail, in order to convince the officer that he had paid his fare, were questions for the jury. The carrier, it is true, would not be liable to a passenger for injuries resulting from perils which such a sudden emergency impelled the passenger to take, when the carrier had not by its own negligence brought on the emergency or the peril. But in this case there was evidence from which the jury could infer that the peril of going on the steps was assumed without negligence of the passenger, on account of the neglect of the carrier to have the water closet unlocked.

The last exception alleges error by the Court in giving the following instruction at the request of the plaintiff's counsel: "An injury to a passenger on a train is itself *prima facie* evidence of negligence or liability on the part of the railroad company. The burden then is on the railroad company to show that it is not liable." The error in this instruction was in the omission to limit the presumption of negligence to injuries to a passenger arising from some instrumentality or agency of the carrier. In *Anderson* v. *S. C. & G. Railroad Co.,* 77 S. C., 434, 58 S. E., 149, the Court says: "According to the rule in this State there is no presumption of negligence on the part of the carrier from the bare fact that a passenger has been injured while on the carrier's train, but that such presumption does arise on proof

of such injury as the result of some agency or instrumentality of the carrier, some act of omission or commission of the servants of the carrier or some defect in the instrumentalities of transportation. *Steele* v. *Railroad Co.,* 55 S. C., 389, 33 S. E., 509; *Jarrell* v. *Ry.,* 58 S. C., 494, 36 S. E., 910; *Doolittle* v. *Ry. Co.,* 62 S. C., 193, 40 S. E., 133; *Stembridge* v. *Ry. Co.,* 65 S. C., 447, 43 S. E., 968; *Hunter* v. *Ry. Co.,* 72 S. C., 340, 51 S. E., 860; *Brown* v. *A. C. L. Ry. Co.,* 83 S. C., 53."

The error was important because the evidence made an issue for the jury as to whether the proximate cause of the fall from the train was the omission of the defendant's servants to have the water closet accessible to plaintiff in his emergency or to take steps to safeguard a sick passenger, or was the act of the plaintiff himself in unnecessarily going on the platform, or in releasing his hold on the guard rail.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the cause be remanded to that Court for a new trial.